113 Pa. Commonwealth Ct. 119 (1988)
536 A.2d 852
The Pennsylvania State University, Petitioner
v.
Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Labor Standards, Respondent.
The Pennsylvania State University, Petitioner
v.
Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Labor Standards, Respondent.
The Pennsylvania State University, Petitioner
v.
Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Labor Standards, Respondent.
No. 2175 C.D. 1986, 2176 C.D. 1986 and 2410 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued November 18, 1987.
January 27, 1988.
*120 Argued November 18, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.
Wendell V. Courtney, McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., for petitioner.
*121 Richard C. Lengler, Assistant Counsel, with him, Peter C. Layman, Chief Counsel, for respondent.
John D. Killian, with him, Ronda K. Kiser, Killian & Gephart, for intervenor, Nancy J. Treat.
Mary Jane Forbes, with her, Robert A. Mills, McNees, Wallace & Nurick, for amicus curiae, Pennsylvania Association of Colleges and Universities.
OPINION BY JUDGE PALLADINO, January 27, 1988:
Pennsylvania State University (Petitioner) appeals an order of the Department of Labor and Industry, Bureau of Labor Standards (Bureau) requiring Petitioner to allow Nancy J. Treat, William J. Kienzle, Jr., and Steven Stack (Respondents) to examine certain tenure reports.
Respondents were employed as nontenured professors by Petitioner.[1] According to Petitioner's regulations and procedures, members of its faculty were eligible for tenure after seven years of employment. During the first seven years of employment, each faculty member was subject to periodic review. These reviews were conducted by academic administrators, including Department Heads, Deans, the Executive Vice President, and the President of Petitioner. In addition, other tenured faculty members, serving on peer review committees, submitted written reports on the candidates for tenure. Faculty members serving on the peer review committees did so voluntarily and not as a condition of employment *122 and were advised that the committee proceedings would be confidential.
Respondents were denied tenure and thereafter sought permission from Petitioner to examine the reports prepared in connection with their tenure reviews, including those prepared by the peer review committees.[2] Petitioner denied them access to all tenure reports. Respondents then filed a petition with the Bureau requesting the Bureau to invoke its enforcement powers under Section 1324 of the Personnel Files Act[3] (Act) and to order Petitioner to allow Respondents access to the tenure reports.
Hearings were held on April 11, 1984. The Hearing Examiner determined that the peer review committee reports constituted "performance evaluations" subject to inspection under the Act and that Petitioner was required to permit Respondents to examine all of the tenure reports. In its Final Decisions and Orders of June 26, 1986 and July 16, 1986, the Bureau adopted the findings and conclusions of the Hearing Examiner and affirmed his decision.
On appeal, Petitioner does not contest that portion of the Bureau's decision which allows Respondents to examine *123 the reports prepared by academic administrators. However, Petitioner does argue that the Bureau erred in concluding that Respondents may examine the peer review committee reports. Petitioner contends that the peer review committee reports do not constitute "performance evaluations," but are letters of reference not subject to inspection.
Our scope of review of an administrative agency decision is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C. S. §704.
Section 1322 of the Act requires an employer, at reasonable times and upon the request of an employee, to permit that employee to inspect his personnel files used to determine qualifications for employment, promotion, additional compensation, termination, or disciplinary action.[4] Section 1321 of the Act defines "personnel file" as:
If maintained by the employer, any application for employment, wage or salary information, notices of commendations, warnings or discipline, authorization for a deduction or withholding of pay, fringe benefit information, leave records, employment history with the employer, including salary information, job title, dates of changes, retirement record, attendance records, and performance evaluations. The term `personnel file' shall not include . . . letters of reference. . . . (Emphasis added.) 43 P.S. §1321.
Thus, in this case of first impression, the sole question presented for our review is whether the peer review committee reports constitute performance evaluations or letters of reference.
*124 The Act does not otherwise define the above terms. The Bureau addressed the distinction between "performance evaluation" and "letter of reference" in its 1982 decision in Hoagland v. Lehigh University (Hearing Examiner Report of February 22, 1982; Final Decision of Bureau of February 24, 1982).[5] In that case, the Bureau determined that the term "performance evaluation," in common usage, indicates a type of report which an individual is required to complete. In contrast, a "letter of reference" is considered a statement which an individual is requested to prepare on behalf of another. The individual preparing a letter of reference is generally not compelled to do so by a superior or set of procedures and "will usually decline to submit such a letter on behalf of an undeserving individual rather than prepare a disparaging letter." Hoagland, Hearing Examiner Report at 5. In addition, the Bureau in Hoagland found that in order for a document to be considered a "performance evaluation" under the Act, the contents of that document must have been used to determine an employee's qualifications for employment, promotion, additional compensation, termination, or disciplinary action.
With these guidelines in mind, the Bureau in Hoagland concluded that peer review committee reports were performance evaluations where faculty members prepared these reports in connection with tenure evaluations *125 of other professors and were required to serve on these committees as a condition of employment.
Petitioner argues that the decision in Hoagland is inapplicable to the instant case because the faculty members in this case voluntarily served on the peer review committees and were not required to do so as a condition of employment. Petitioner contends that because the faculty members serving on the committees have no supervisory responsibility over the tenure candidates and can only make tenure recommendations, the peer review committee reports constitute letters of reference.
In this case, the Hearing Examiner concluded, and the Bureau affirmed, that internal evaluations of an employee's performance in areas related to employment, prepared by Petitioner's employees and generated by Petitioner, were subject to inspection under the Act.[6] The Hearing Examiner did not distinguish between reports prepared by peers and reports prepared by superiors, but focused upon whether the reports themselves concerned an employee's qualifications for employment, promotion, additional compensation, termination, or disciplinary action.
In order to review Petitioner's contentions as well as the Bureau's decision, we must first examine the tenure procedures followed by Petitioner in denying Respondents tenure.[7] According to Petitioner's regulations (PS-23), *126 a tenure candidate at Petitioner's University Park Campus is initially reviewed at the Department level. The Department Committee of Promotion and Tenure submits a recommendation to the Department Head. If both the Department Committee and Department Head agree to deny tenure and the Dean of the College concurs, tenure is denied. If either the Department Committee or Department Head votes to award tenure, the College Promotion and Tenure Committee conducts a review of the candidate. Following review and recommendation by the College Committee, the Dean of the College makes a tenure recommendation. If the Dean of the College votes to deny tenure, no further review is conducted. However, if the Dean of the College votes to award tenure, the University Promotion and Tenure Committee and Executive Vice-President review the candidate. Both the University Committee and Vice-President make recommendations to the President of Petitioner, who makes the final decision on tenure
Tenure review at Petitioner's Commonwealth Campuses involves a slightly different procedure. Initial review occurs at the Commonwealth Campus level where the Campus Promotion and Tenure Committee and Campus Director make recommendations. Positive and negative reviews are submitted to the Department level for further review. The Department Committee on Promotion and Tenure and the Department Head review the candidate and transmit positive and negative reviews to the Dean of the College and the Dean of the Commonwealth Campus. If the Campus and Department levels vote to deny tenure and both Deans concur, tenure is denied. If either the Campus or Department review results in a recommendation to award tenure, the College Promotion and Tenure Committee conducts a review. After the College Committee conducts its review, both Deans conduct reviews. A vote to deny tenure *127 by both Deans results in a denial of tenure. However, if either Dean votes to award tenure, the University Promotion and Tenure Committee and Executive Vice-President review the candidate and make recommendations to the President of Petitioner. The President then renders a final decision on tenure.
While we recognize that the faculty members serving on the peer review committees do so voluntarily and not as a condition of their employment, the procedures outlined above indicate that, once a faculty member chooses to serve on a peer review committee, such faculty member must participate in making a tenure recommendation, be it positive or negative. The peer review committee does not have the option of simply declining to make any recommendation whatsoever rather than submit a negative recommendation. Petitioner's regulations state that each unit "shall provide evaluations to be included in the dossier." (Emphasis added) (PS-23). These regulations indicate that the peer review committees were required to complete the evaluations, thereby lending further support to the Bureau's determination that the reports were performance evaluations.
The peer review committee reports in this case were not prepared at the request of the tenure candidate, but were generated as a result of Petitioner's procedures and regulations. The reports were prepared by a designated group of tenured members of Petitioner's faculty over which Respondents had no control or input. Given these considerations, Petitioner's argument that the peer review reports are analogous to letters of reference is without merit.
The fact that the faculty serving on the committees did not possess supervisory authority over the tenure candidates is not dispositive. Rather, the nature of the *128 peer review reports is controlling. Because these reports evaluate tenure candidates in the areas of teaching ability, research, scholarly performance, and service to the university, public, and profession, we agree with the Bureau's determination that these reports constituted performance evaluations under its Hoagland guidelines.
This court has held that the construction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it is clear that such construction is erroneous. See Spicer v. Department of Public Welfare, 58 Pa. Commonwealth Ct. 558, 560, 428 A.2d 1008, 1009 (1981).
Finally, this court will not presume that the integrity or candor of the faculty members participating on the peer review committees will be adversely affected if we do not distinguish between service on a committee which is volunteered and service which is required. Rather, the balancing of an employer's interest in the confidentiality of personnel files and an employee's interest in inspecting those files is a matter for the sound discretion of the legislature.
Because the Bureau correctly concluded that the peer review committee reports constituted performance evaluations under the Act, the Bureau properly ordered Petitioner to allow Respondents to inspect those reports.
Accordingly, we affirm.

ORDER
AND NOW, January 27, 1988, the orders of the Department of Labor and Industry, Bureau of Labor Standards in the above-captioned matter are affirmed.
President Judge CRUMLISH and Judge DOYLE dissent.
NOTES
[1] Nancy J. Treat was employed in 1977 as an assistant professor of Individual and Family Studies at Petitioner's Fayette Campus. William J. Kienzle, Jr. was employed in 1977 as an assistant professor of History at Petitioner's Shenango Valley Campus. Steven Stack was employed in 1981 as an associate professor of Sociology at Petitioner's University Park Campus.
[2] Treat was denied tenure on June 14, 1983 with termination of employment effective June 30, 1984. However, by letter agreement of January 31, 1984, the decision to deny Treat tenure was rescinded and Treat was granted a four-year extension of her nontenured position in order to allow additional time for tenure consideration. Kienzle was denied tenure on March 25, 1983 with termination of employment effective June 30, 1984. Stack was denied tenure on May 1, 1984 with termination of employment effective June 30, 1985.
[3] Act of November 26, 1978, P.L. 1212, 43 P.S. §1324. Section 1324 provides that the Bureau is authorized and directed to enforce the provisions of the Act as well as to make and enforce such orders as it deems appropriate so as to provide employees with access to records.
[4] 43 P.S. §1322.
[5] We note that when the words of a statute are not explicit, the intention of the legislature may be ascertained by reference to administrative interpretations of that statute. 1 Pa. C. S. §1921(c)(8). Further, in construing a statute, words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition. 1 Pa. C. S. §1903(a).
[6] Tenure review involves an evaluation of the candidate in four areas: teaching ability and effectiveness, research or creative accomplishment, scholarly performance and mastery of subject matter, and service to the university, public, and the profession. The Pennsylvania State University Policy Manual, Promotion and Tenure Procedures and Regulations (PS-23).
[7] The tenure procedures which exist at the University Park Campus and the Commonwealth Campuses are the subject of a stipulation between the parties. Our summary of tenure procedures, which follows, is drawn directly from the stipulation.