546 A.2d 126

Lafayette College, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Labor Standards, Respondent.

Argued April 22, 1988, before Judges DOYLE, PALLA-DINO and SMITH, sitting as a panel of three.

*Bruce D. Bagley, McNees, Wallace & Nurick,* for petitioner.

*Richard C. Lengler,* Assistant Counsel, with him, *Peter C. Layman,* Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, July 19, 1988:
Lafayette College (Petitioner) appeals an order of the Department of Labor and Industry, Bureau of Labor

Standards (Bureau) requiring Petitioner to allow Richard K. Matthews (Respondent) to examine certain tenure reports.

Respondent was employed as a non-tenured professor by Petitioner.[1] Respondent was notified on March 12, 1984 that he would not be granted tenure. Respondent thereafter sought permission from Petitioner to examine reports prepared in connection with his tenure review. These tenure reports were prepared by the Head of the Department of Government and Law as well as several other tenured faculty members of that Department. Respondent also requested permission to inspect letters written by scholars of other academic institutions evaluating a manuscript authored by Respondent.[2]

---

[1] Respondent was employed in 1977 as an Assistant Professor of Government and Law.

[2] The tenure procedures followed by Petitioner are outlined in its Faculty Handbook. According to this Handbook, the Department Head makes the initial recommendation for tenure, although the Provost or Appointments, Promotions, and Dismissals Committee (APD Committee) may also initiate consideration. The Provost refers recommendations to the APD Committee which reports to the President of Petitioner. The President in turn makes a recommendation to the Board of Trustees' Committee on Educational Policy. The Board of Trustees renders the final tenure decision.

A faculty member who is not recommended for tenure by the APD Committee may request reconsideration and/or appeal to the President. When appeals are taken to the President, the President may establish an advisory committee composed of three tenured members of the faculty with the rank of Assistant Professor or higher and with at least two years of service with Petitioner. One member of the advisory committee is selected by the Provost, one is chosen by the tenure candidate, and the third is mutually agreed upon by the Provost and tenure candidate.

Tenure reviews are provided by the Department Head. One portion of the Department Head's review consists of an evaluation of the tenure candidate's teaching performance, scholarship, and professional achievement. According to Petitioner's tenure policy,

Petitioner denied him access to the tenure reports. Respondent then filed a petition with the Bureau requesting the Bureau to invoke its enforcement powers under Section 1324 of the Personnel Files Act[3] (Act) and to order Petitioner to allow Respondent access to the tenure reports.

Hearings were held on September 26, 1984. The Hearing Examiner determined that the tenure reports constituted "performance evaluations" subject to inspection under the Act and that Petitioner was required to permit Respondent to examine the reports.[4] In its Final Decision and Order of January 6, 1987, the Bureau substantially adopted the findings and conclusions of the Hearing Examiner.[5]

---

this portion of the evaluation *is* available to the candidate. The Department Head also provides an analysis of the relationship between the candidate and the program needs of that Department and of Petitioner as a whole. All tenured faculty members in the candidate's Department are expected to supply written recommendations on tenure. Other faculty members of the Department may provide recommendations. The Provost may also obtain additional information from other sources and can include in the candidate's file relevant material submitted by persons familiar with the candidate's performance and potential. *See* Record at 64a-69a.

[3] Act of November 26, 1978, P.L. 1212, 43 P.S. §1324. Section 1324 provides that the Bureau is authorized and directed to enforce the provisions of the Act as well as to make and enforce such orders as it deems appropriate so as to provide employees with access to records.

[4] The Hearing Examiner denied Respondent's request to inspect one portion of a letter dated October/November 1983 from the Department Head containing a recommendation as to Petitioner's need for a political theorist. Respondent did not file exceptions to this denial.

[5] The Bureau modified the Hearing Examiner's decision by sustaining Petitioner's exception to the Hearing Examiner's decision allowing Respondent to examine the other portion of the same letter from the Department Head. The Bureau determined from the record that Petitioner had previously shared this part of the letter with Respondent and was not obligated to disclose it a second time.

On appeal, Petitioner contends that Respondent's right to inspect the tenure reports is moot because he is no longer an employee of Petitioner. Petitioner also asserts that Respondent is not entitled to exercise inspection rights because he waived those rights through his employment contract which incorporated the terms of the Faculty Handbook.[6] Petitioner further contends that the tenure reports do not constitute performance evaluations but rather are letters of reference not subject to inspection. Finally, Petitioner argues that the documents are protected from disclosure by an academic freedom privilege encompassed by the first amendment of the United States Constitution.

Our scope of review of an administrative agency decision is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C. S. §704.

## I. MOOTNESS

Petitioner first argues that Respondent is not entitled to examine the tenure reports because he is no longer an employee of Petitioner. Section 1321 of the Act defines "employee" as any person currently employed, laid off with reemployment rights or on leave of absence, but excludes one who is an applicant for employment. 43 P.S. §1321. Although Petitioner is correct in its statement that Respondent is not currently an em-

---

[6] According to the terms of the Faculty Handbook, all of the tenure reports at issue in this case are considered "privileged" with the exception of two other reports prepared by the Department Head evaluating Respondent's teaching performance. Petitioner concedes that these two reports would otherwise be subject to inspection. However, Petitioner argues that for reasons of mootness, Respondent should not be permitted to examine them. Petitioner's Brief at 7.

ployee, Respondent was an "employee" under the Act at the time he requested and was denied access to the tenure documents. Further, were we to hold as Petitioner suggests, an employer could circumvent the provisions of the Act simply by firing an employee after he seeks to examine his personnel files or by delaying inspection until after the employee's contract expires. Such a result could not have been intended by the Legislature. *See* 1 Pa. C. S. §1922(1).

## II. WAIVER

Petitioner next contends that Respondent should be deemed to have waived his inspection rights because his employment contract incorporated the provisions of Petitioner's tenure review policy (as outlined in the Faculty Handbook). Petitioner alleges that its policy has been to deny tenure candidates access to the tenure documents at issue in this case. Record at 69a. Thus, Petitioner reasons that Respondent voluntarily consented to this policy by entering into an employment contract with Petitioner.

In this case, the Hearing Examiner determined, and the Bureau affirmed, that there was no evidence that Respondent "intentionally and knowingly relinquished rights granted him by the legislature under the Personnel Files Act when he accepted employment." Hearing Examiner Report at 15. Having reviewed the record in this matter, we will not disturb that finding.[7]

## III. PERFORMANCE EVALUATIONS

Next, Petitioner argues that the tenure reports do not constitute "performance evaluations" but are "letters

---

[7] Because we resolve the waiver issue on this ground, we expressly do not address the question of whether an employee can validly waive his rights to inspection under the Act by entering into an employment contract.

of reference" not subject to employee inspection. Section 1322 of the Act *requires* an employer, at reasonable times and upon the request of an employee, to permit that employee to inspect his personnel files used to determine qualifications for employment, promotion, additional compensation, termination, or disciplinary action. 43 P.S. §1322. Section 1321 of the Act defines "personnel file" as:

> If maintained by the employer, any application for employment, wage or salary information, notices of commendation, warnings or discipline, authorization for a deduction or withholding of pay, fringe benefit information, leave records, employment history with the employer, including salary information, job title, dates of changes, retirement record, attendance records, and *performance evaluations*. The term 'personnel file' shall *not* include . . . letters of reference. . . .

43 P.S. §1321. (Emphasis added.)

## A.   Reports By Co-Faculty Members

In this case, the Hearing Examiner determined that the tenure reports prepared by co-faculty members were performance evaluations. The Hearing Examiner concluded that whether the reports were prepared voluntarily or were mandatory was not dispositive.[8] Interpreting the Bureau's prior decision in *Hoagland v. Lehigh University* (Hearing Examiner Report of February 22, 1982; Final Decision of Bureau of February 24, 1982),[9] the Hearing Examiner found the reports in the

---

[8] However, the Hearing Examiner noted that the fact that the tenured faculty members in the candidate's Department were *expected* to provide recommendations was indicative of a mandatory duty.

[9] The Bureau in *Hoagland* established several criteria for determining whether a particular document is a performance evalua-

instant case to be performance evaluations where the reports were "[e]valuations of an employee's work performance submitted by co-workers under the direction, supervision, and control of the employer, and in accordance with the employer's procedures, instructions, and guidelines." Hearing Examiner Report at 13.

We find the Bureau's decision in the case at bar to be consistent with our recent decision in *The Pennsylvania State University v. Department of Labor and Industry, Bureau of Labor Standards,* 113 Pa. Commonwealth Ct. 119, 536 A.2d 852 (1988), wherein we held that peer review committee reports constituted performance evaluations even though service on those committees was voluntary and members of the committees had no supervisory responsibility over the tenure candidates. In *Penn State,* the peer review committee reports were generated as a result of the University's procedures and not at the behest of the tenure candidate. Further, the reports evaluated the tenure candidate in areas of teaching ability, research, and scholarly performance. *Id.* at 125, 536 A.2d at 855. Accordingly, we concluded that the reports were not letters of reference but performance evaluations. Based upon the con-

---

tion or a letter of reference. A performance evaluation is generally required to be completed. The contents of a performance evaluation are used to assess an employee's qualifications for employment, promotion, disciplinary action, termination, or additional compensation. In contrast, a letter of reference is a letter which an individual is requested to supply on behalf of another. The individual preparing a letter of reference is generally not compelled either by procedures or by the direction of a superior to do so. The individual "will usually decline to submit such a letter on behalf of an undeserving person rather than prepare a disparaging letter." *Hoagland,* Hearing Examiner Report at 5. *See also* 1 Pa. C. S. §1921(c)(8) (intention of legislature may be ascertained by reference to administrative interpretations of a statute when the words of that statute are not explicit).

siderations set forth in *Penn State,* we agree with the Bureau's determination in this case that the tenure reports prepared by co-faculty members constitute performance evaluations.

## B. Reports By External Scholars

Petitioner further contends that the evaluations submitted by the three scholars employed by other academic institutions are letters of reference. Petitioner argues that, pursuant to the *Hoagland* guidelines, these scholars were not under the control and supervision of Petitioner and could have declined to participate in the tenure review process.

In *Hoagland,* the Bureau found that evaluations submitted by individuals not employed by Lehigh University nor under the University's control and supervision constituted letters of reference. The Bureau in *Hoagland* noted that the tenure candidate retained some input over the selection of the individuals that would submit evaluations.

The Hearing Examiner distinguished *Hoagland* because the external scholars in the instant case received compensation from Petitioner.[10] The Hearing Examiner reasoned that the "expectation or realization of financial gain" brought the scholars under Petitioner's direction, supervision, and control. Hearing Examiner Report at 14. Thus, the Hearing Examiner concluded that the reports prepared by the external scholars also constituted performance evaluations under the Act. This court has held that the construction of a statute by those charged with its execution and application is entitled to great weight and should not be disregarded or overturned ex-

---

[10] The three external evaluators each received approximately $100-$200 for critiquing and preparing a report on a manuscript authored by Respondent.

cept for cogent reasons, and unless it is clear that such construction is erroneous. *See Spicer v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 560, 428 A.2d 1008, 1009 (1981). Because the Bureau correctly concluded that the tenure reports constituted performance evaluations under the Act, the Bureau properly ordered Petitioner to allow Respondent to inspect those reports.

## IV. ACADEMIC FREEDOM PRIVILEGE

Finally, Petitioner argues that the Bureau's decision permitting Respondent to inspect the tenure reports in this case infringes upon Petitioner's constitutional privilege of academic freedom. Citing *Equal Employment Opportunity Commission v. Franklin and Marshall College,* 775 F.2d 110 (3d Cir. 1985), the Hearing Examiner recommended that the Bureau not recognize such a privilege. Hearing Examiner Report at 15. In *EEOC v. Franklin and Marshall,* the EEOC brought an action to enforce compliance with a subpoena duces tecum compelling disclosure of confidential peer review materials by the College.[11] The enforcement action arose out of a charge of discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §§2000e to 2000e-17. The Third Circuit Court of Appeals declined to recognize a qualified academic freedom privilege,[12] basing its decision on Congress' intent to prohibit discrimination and concomitant refusal to ex-

---

[11] The peer review materials subpoenaed by the EEOC included the tenure review files of the professor alleging unlawful discrimination as well as tenure review files of other professors at the College.

[12] The College in *EEOC v. Franklin and Marshall* urged the court to adopt a qualified academic peer review privilege which would protect confidential peer review materials from disclosure unless the party seeking disclosure shows that the material requested is relevant to the charge under Title VII.

empt academic institutions from Title VII's require-
ments.[13] 775 F.2d at 114-15.

Petitioner contends that the decision in *EEOC v.
Franklin and Marshall* is not controlling in this case be-
cause charges of unlawful discrimination were not made
here. Petitioner further asserts that an examination of
the legislative history of the Personnel Files Act does
not indicate whether and to what extent the Legislature
considered the impact which the Act would have on aca-
demic institutions and on the tenure review process, in
particular. Thus, Petitioner argues that it is not clear
that the Legislature intended the provisions of the Act
to be applied strictly where the employer is an academ-
ic institution.

We agree with petitioner that *EEOC v. Franklin
and Marshall* is not controlling. Further, we are not un-
mindful of Petitioner's concerns about the integrity and
candor with which the tenure review process can be
carried out. However, we do note that enactments of
the General Assembly enjoy a strong presumption of
constitutionality, with all doubts resolved in favor of sus-
taining the constitutionality of the legislation. *Insurance
Adjustment Bureau v. Insurance Commissioner of Com-
monwealth*, 108 Pa. Commonwealth Ct. 418, 530 A.2d
132 (1987). The balancing of an employer's interest in
the confidentiality of personnel files and an employee's

---

[13] The court of appeals, in analyzing the College's first amend-
ment argument, recognized that the "four essential freedoms of a
university . . . include the freedom to determine for itself on aca-
demic grounds who may teach, what may be taught, how it shall be
taught, and who may be admitted to study." *EEOC v. Franklin and
Marshall*, 775 F.2d at 114 (citing *Sweezy v. New Hampshire*, 854
U.S. 234 (1957)). The court in *EEOC v. Franklin and Marshall*
further noted that "[c]entral to the determination of 'who may
teach,' or who will receive tenure, has been the system of peer
review by confidential evaluations and recommendations of tenured
faculty." *Id*. at 114.

interest in inspecting those files is a matter for the sound discretion of the Legislature. *The Pennsylvania State University v. Department of Labor and Industry, Bureau of Labor Standards*, 113 Pa. Commonwealth Ct. 119, 128, 536 A.2d 852, 856 (1988). In enacting the Personnel Files Act, the General Assembly has not chosen to exempt academic institutions from the provisions allowing employees to examine their files. We will not disturb that decision..

Accordingly, we affirm.

ORDER

AND NOW, July 19, 1988, the order of the Department of Labor and Industry, Bureau of Labor Standards in the above-captioned matter is affirmed.

Judge DOYLE dissents.